UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| DOSS KUYKENDALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14-1477 |
| | ) | |
| ELDON KENNELL, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## **MERIT REVIEW OPINION**

Plaintiff, proceeding pro se and incarcerated at Pontiac Correctional Center, brings the present lawsuit pursuant to 42 U.S.C. § 1983, alleging Eighth Amendment violations for excessive force, conditions of confinement, deliberate indifference to a serious medical need, and First Amendment violations related to his religious practices. The matter comes before this Court for merit review under 28 U.S.C. §1915A. In reviewing the complaint, the Court takes all factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

### **ALLEGATIONS**

### **June 17, 2013 Incident**

During a cell extraction, Plaintiff alleges he was punched and kicked several times, and he was sprayed with a chemical agent four times in three-second intervals: twice in the face, once in the genitals and once all over his back. As a result, Plaintiff alleges several dark bruises developed on his body, and that chemical agent along with the psoriasis on his skin caused an extreme burning sensation. Plaintiff alleges that his skin glowed bright red-orange from the amount of chemical agent used.

Plaintiff alleges several requests for a shower were denied. Instead, he was placed naked into a cell and told to rinse off with water from the sink. Plaintiff remained in the cell for approximately two (2) days without basic personal hygiene supplies, including toilet paper. His requests for those items fell upon deaf ears, as did his request for cleaning supplies upon the discovery of dried feces within the cell. The smell of feces, Plaintiff alleges, made it difficult for him to eat. Plaintiff alleges that attempts to clean the chemical agent off his body resulted in approximately one inch of standing water in the cell. Furthermore, Plaintiff alleges that he was unable to stop walking because, if he did, the burning sensation on his skin became too intense. After an extended period of time, Plaintiff alleges he collapsed from exhaustion. No help was provided.

Plaintiff was moved to a different cell where he was eventually given a jumpsuit, but denied personal hygiene items. Three days later (and 5 days after the cell extraction), Plaintiff was allowed to shower, but still required to wear the same jumpsuit containing residue from the chemical spray. Plaintiff received bedding and personal hygiene items shortly thereafter.

### **Religion Claims**

Plaintiff alleges that Defendant Kennell, the prison chaplain, denied Plaintiff's requests to change his religious affiliation, to be provided the exact dates of religious holidays for purposes of requesting special meals, and for an otherwise kosher diet. Plaintiff alleges that Defendant Kennell told Plaintiff to skip meals if Plaintiff wanted to fast in observance of those holidays, and that any food provided on those days would be his regular prison meal. In addition, Plaintiff alleges that Defendant Kennell made several derogatory remarks regarding Plaintiff's religious affiliation.

### Plaintiff's Medical Condition

Plaintiff alleges that he suffers from severe psoriasis on his skin, and as part of treatment, he receives prescription medication. During an unspecified time period, Plaintiff alleges that Defendants Tilden and Ojelaide, both prison doctors, as well as Defendant Arroyo, the healthcare administrator, denied Plaintiff's requests to be seen by a dermatologist. Furthermore, Plaintiff alleges that Defendant Tilden ordered prescription medication for Plaintiff, but that Plaintiff did not receive it until approximately one month later.

### ANALYSIS

### Excessive Force Claims

According to Plaintiff, Defendant DeLong ordered a cell extraction after Plaintiff refused to leave his cell for transfer to administrative detention on June 17, 2013 in the North Cell House. At the time, Plaintiff alleges he was confused and was suffering from mental health issues and wanted to be transferred back to the mental health unit. Plaintiff alleges that he was "gassed" four times, punched, kicked, and sprayed excessively with a chemical agent during the extraction. Plaintiff alleges that Defendant Forbes and several unknown officials participated in the extraction. Plaintiff alleges he sustained several dark bruises on his body and experienced a severe burning sensation from the chemical agents used.

In Eighth Amendment claims for excessive force, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citation omitted); *see DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000) (applying *Hudson*). In making this determination, the court may examine several factors, "including the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived

by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *Dewalt*, 224 F.3d at 619. Significant injury is not required, but "a claim ordinarily cannot be predicated on a *de minimis* use of physical force." *Id.* at 620 (citing *Hudson*, 503 U.S. at 9-10). "Thus, not every push or shove by a prison guard violates a prisoner's constitutional rights." *Id.*

The use of chemical agents on its own does not violate the Constitution. *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) ("The use of mace, tear gas, or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or subdue recalcitrant prisoners does not constitute cruel and unusual punishment."). Constitutional liability attaches only when prison officials use chemical agents "in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Id.*

Plaintiff alleges that he was sprayed with so much chemical agent that his skin glowed bright red-orange. In addition, Plaintiff alleges that prison officials made special trips to his cell solely to observe the resulting effects from the excessive use of chemical agent on the Plaintiff. Liberally construed, these allegations could support a finding that prison officials used an unnecessary amount of chemical agent on Plaintiff during the cell extraction. When combined with the other allegations, a finding that prison officials used excessive force is certainly plausible. Therefore, the Court finds that Plaintiff has stated a claim.

The Complaint, however, does not identify the individuals comprising the extraction team beyond the mention of correctional supervisors DeLong and Forbes. At a minimum, Defendants DeLong and Forbes should be included because of their alleged direct involvement in the incident. To the extent that Plaintiff alleges the participation of other unidentified prison officials, the Court has a duty to assist pro se plaintiffs in identifying these individuals. *Donald*

v. *Cook Cnty. Sheriff's Dept.*, 95 F.3d 548, 555-56 (7th Cir. 1996). For that reason, Defendants DeLong and Forbes, as correctional supervisors, shall also remain defendants for the purpose of identifying through discovery the other correctional officers involved and their exact roles in the cell extraction. Plaintiff makes no allegations against the remaining named defendants related to the excessive force claim.

### Conditions of Confinement

The standard for analyzing an Eighth Amendment conditions of confinement claim in the prison context is well-established: a prison official is liable for denying a prisoner of his or her basic human needs, but only if the official is aware of and deliberately indifferent to an objectively serious risk of harm. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir.2008). The court must first determine whether the conditions at issue were "sufficiently serious" such that "a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan,* 511 U.S. 832, 834 (1994) (internal quotation marks omitted); *see also Gillis v. Litscher,* 468 F.3d 488, 493 (7th Cir.2006). Prison conditions may be uncomfortable and harsh without violating the Eighth Amendment. *See Dixon v. Godinez,* 114 F.3d 640, 642 (7th Cir.1997). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella,* 95 F.3d 586, 590 (7th Cir.1996) (citing *Farmer,* 511 U.S. at 832). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Henderson v. Sheahan,* 196 F.3d 849, 845 (7th Cir.1999) (quoting *Hudson*, 503 U.S. at 9).

Plaintiff's claims revolve around the denial of basic hygiene and cleaning supplies, water in his cell, and exposure to human waste during the time he was in segregation. Plaintiff alleges further that he was denied bedding, a mattress, and clothing for at least the first 27 hours, and the

denial continued intermittently over the period of approximately five (5) days. Such conditions, the Seventh Circuit has held, constitute a sufficient deprivation for purposes of a conditions-of-confinement claim. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (denial of mattress, bedding, hygiene supplies in cell with standing water, non-working sink and toilet, and smeared blood and feces on walls); *Isby v. Clark*, 100 F.3d 502, 505 (7th Cir. 1996) (dried blood, feces, urine, and food on the walls).

Despite these conditions, a prison official cannot be held liable unless "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Plaintiff alleges that he told every prison official that came by his cell of the conditions. Specifically, he alleges that Defendants DeLong, Pierce, Myers, and Punke were personally aware of the conditions in Plaintiff's cell, but did not provide any of the items requested. Plaintiff alleges that Defendant DeLong stated he (DeLong) had "no sympathy" for Plaintiff, Defendant Punke stated to Plaintiff that "what you get suits you," and Defendant Pierce and Myers acknowledged the conditions, but failed to take any steps to remedy the situation. These allegations, if true, could support an Eighth Amendment conditions-of-confinement claim.

## Religious Claims

Prisoners have constitutionally protected rights to the free exercise of their religion while they are incarcerated. *Cruz v Beto*, 405 U.S. 319 (1972). However, due to the many exigencies of running a prison, those rights may sometimes be limited to the extent that they interfere with or compromise penological interests. *O'Lone v Estate of Shabazz*, 482 U.S. 342, 350-51 (1987).

To establish a constitutional violation, the prisoner must first show that the restriction substantially burdens the exercise of a constitutional right. *Nelson v Miller*, 570 F.3d 868, 877 (7th Cir. 2009). Such a burden exists when there is "'substantial pressure on an adherent to modify his behavior and violate his beliefs.'" *Koger v Bryan*, 523 F.3d 789, 799 (7th Cir. 2008) (quoting *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). Once the prisoner makes this showing, the Court must then determine whether the restriction furthers or is reasonably related to legitimate penological interests. *Turner v. Aafley*, 482 U.S. 78, 89-91 (1987); *see also Reed v Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988)(a prisoner is entitled to practice religion so long as doing so does not "unduly burden" prison administration).

Plaintiff alleges that in March 2013 he requested to change his religious affiliation from Catholic to Messianic Hebrew, then to Judaism, and lastly to Assemblies of Yahweh. In that context, he asked to speak to a rabbi, obtain a list of Jewish holidays, be served special religious holiday meals and a Kosher diet in order to follow the tenets of his religion. According to Plaintiff, his requests were denied by Defendant Kennell, the prison chaplain. (Doc. 1 at 14, ¶ 50). While prison officials may not put an inmate "to an improper choice between adequate nutrition and observance of the tenets of his faith," *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990), Plaintiff has not alleged how the denial of his requests including a Kosher diet has done so. As alleged by Plaintiff, his "designated religious affiliation" was that of the Catholic faith; and the religious observances including Kosher meals requested by him are not claimed to be requisites of the Catholic faith, but instead, appear more consistent with the requirements of the Messianic Hebrew, Judaic, or Assemblies of Yahweh faiths to which Plaintiff wanted to establish as his designated religious affiliation. Viewed in that light, the claim is construed as a claim that Defendant Kennell unconstitutionally prevented him from the exercise of his religion

by refusing to honor his belated designation of a new religious affiliation that legitimized his various requests. However, Plaintiff has not alleged sufficient facts to make out a plausible claim that Defendant Kennell violated his 1st Amendment rights by refusing to recognize Plaintiff's profession of a new religious affiliation. Therefore, the Court finds that Plaintiff has failed to state a First Amendment claim.

If Plaintiff seeks to amend this claim, the Court instructs Plaintiff that he must file a separate lawsuit. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent [confusion] but also to ensure that prisoners pay the required filing fees" and comply with the Prisoner Litigation Reform Act). Plaintiff's alleged First Amendment claims do not share a common set of facts or defendants with Plaintiff's other alleged claims. Furthermore, the First Amendment claims allegedly arise over a different, though overlapping, time period.

## Deliberate Indifference to a Serious Medical Need

Prison officials are liable if they act with deliberate indifference towards a prisoner's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). A life-threatening medical condition is not required. Rather, the Seventh Circuit has held that a medical condition is serious "where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.1997) (citation omitted).

Plaintiff alleges he suffers from psoriasis and receives prescription medication to treat the condition. From this, the Court infers that Plaintiff's condition is a serious medical need for purposes of an Eighth Amendment medical claim. Plaintiff, however, has not alleged sufficient facts for the Court to find that Defendants Tilden, Ojelade, and Arroyo were deliberately

indifferent. Plaintiff alleges that his prescription medication was not received soon enough, but alleges that the medication was promptly ordered. Plaintiff has not alleged facts to show that the Defendants alleged to have caused this delay were actually responsible for doing so. Furthermore, Plaintiff's desire to see a specialist or receive specific medication is not sufficient, on its own, to support an Eighth Amendment medical claim. *See Snipes*, 95 F.3d 586, 591 (7th Cir. 1996) (mere disagreement with treatment is not sufficient); *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (medical specialist not required to administer constitutionally adequate medical care unless need for specialist is known by treating physicians or the need would be obvious to a lay person). From the allegations, it appears that Plaintiff was receiving ongoing medical care for his condition. Finally, for the same reasons stated in the previous section, if Plaintiff seeks to pursue this claim, he must do so in a separate lawsuit.

## CONCLUSION

The Court finds that Plaintiff has stated Eighth Amendment claims for excessive force against Defendants DeLong and Forbes, and conditions-of-confinement against Defendants DeLong, Pierce, Myers, and Punke. All other claims and defendants shall be dismissed.

IT IS THEREFORE ORDERED:

> 1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff states an Eighth Amendment claim for excessive force against Defendants DeLong and Forbes, and for conditions-of-confinement against DeLong, Pierce, Myers, and Punke. Furthermore, Defendants DeLong and Forbes are available for discovery by the Plaintiff of the identity of any other yet unidentified defendants involved in the June 2013 incident. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

> 2) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before seeking discovery or filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature.

Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Dismiss Defendants Kennell, Pfister, Angus, Birkel, Boling, Greer, Arroyo, Simpson, Tilden, Ojelaide, Wexford Health Services, and Hastings for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. §1915A;**

**2) Attempt service on Defendants pursuant to the standard procedures;**

**3) Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and,**

**Lastly, it is ordered that if a Defendant fails to sign and return a waiver of service for the clerk within 30 days after the waiver is sent, the court will take appropriate steps to effect formal service through the U.S. Marshal's Service on that Defendant and will require that Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).**

ENTERED this 24th day of April, 2015.

_____s/Joe B. McDade_____
JOE BILLY MCDADE
UNITED STATES DISTRICT JUDGE